**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| NATIONAL BUILDERS INSURANCE COMPANY, | ) CASE NO.: <br> ) <br> ) |
| Plaintiff, | ) <br> ) **NATIONAL BUILDERS INSURANCE** |
| vs. | ) **COMPANY'S DECLARATORY JUDGMENT** <br> ) **COMPLAINT** |
| W.O. CANTEY SERVICES, INC., TRASH GURL, LLC, ANNA LARKIN BRADLEY, JOHN-PAUL BRADLEY, AND TU SOLUTIONS, LLC, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

Plaintiff, National Builders Insurance Company ("Builders"), by and through its undersigned counsel, hereby states the following as its complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

1. Pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP, Builders seeks a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties under certain policies of insurance with respect to claims of damages which have arisen as a result of a construction project located at 718 King Street in Charleston, South Carolina, which is the subject of a matter pending in the Court of Common Pleas, County of Charleston, State of South Carolina, Ninth Judicial Circuit titled *Anna Larkin Bradley et al v. W.O. Cantey Services, Inc. d/b/a Cantey Foundation Specialists, et al.,* involving construction defect allegations (the "Underlying Lawsuit"). A copy of the complaint filed in the Underlying Lawsuit is attached as Exhibit A.

1

**JURISDICTION**

2.  Jurisdiction over the claims, subject matter and parties contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

3.  This Court has personal jurisdiction over the Defendants pursuant to S.C. Code Ann. § 36-2-803 because, among other things, Defendants were conducting business in the State of South Carolina, contracting to supply services in the State of South Carolina, and the facts and circumstances giving rise to the claim that is the subject of this action occurred in South Carolina.

**VENUE**

4.  This action properly lies in the United States District Court for the District of South Carolina, Charleston Division, pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the work performed on the project lies in this judicial district; the underlying action is pending in this judicial district; the parties are subject to personal jurisdiction in the state of South Carolina; and a substantial part of the events giving rise to this declaratory judgement action occurred in this judicial district. Thus, venue is proper in this judicial district.

**PARTIES**

5.  This matter is a declaratory judgement action, pursuant to 28 U.S.C. §2201 *et. seq.* and Rule 57, FRCP, seeking a declaration by as to the rights and obligations of the parties herein pursuant to policy of insurance sold by Builders to W.O. Cantey Services, Inc. ("Cantey Services").

6.  Builders is an insurance company organized and existing under the laws of the state of Delaware, is licensed to sell policies of insurance in the state of South Carolina, and it maintains its principal place of business in Georgia.

7. Cantey Services is an entity organized and existing pursuant to the laws of the state of South Carolina.

8. Nothing contained herein is to be construed as in support of the allegations against Cantey Services in the Underlying Lawsuit.

9. Defendant Trash Gurl, LLC is an entity organized and existing pursuant to the laws of the State of South Carolina. Builders seeks no separate relief or judgment from this Defendant, but only seeks to bind it to the outcome of this coverage dispute.

10. Defendant TU Solutions, LLC is an entity organized and existing under the laws of the State of Wyoming and is the owner of the real property and home that is at issue in the Underlying Lawsuit. Builders seeks no separate relief or judgment from this Defendant, but only seeks to bind it to the outcome of this coverage dispute.

11. Defendant Anna Larkin Bradley is a citizen and resident of Charleston County, South Carolina, and is a member of TU Solutions, LLC. Builders seeks no separate relief or judgment from this Defendant, but only seeks to bind her to the outcome of this coverage dispute.

12. Defendant John-Paul Bradley is a citizen and resident of Charleston County, South Carolina. Builders seeks no separate relief or judgment from this Defendant, but only seeks to bind him to the outcome of this coverage dispute.

## FACTUAL ALLEGATIONS

13. On March 6, 2024, Anna Larkin Bradley, John-Paul Bradley, and TU Solutions, LLC filed a lawsuit against, among others, W.O. Cantey Services, Inc. d/b/a Cantey Foundation Specialists in the Charleston County Court of Common Pleas entitled *Anna Larkin Bradley et al. vs. W.O. Cantey Services, Inc. d/b/a Cantey Foundation Specialists et al.*, C/A No. 2024-CP-10-01211. See Exhibit A.

14. According to the Complaint, on January 4, 2022, John-Paul Bradley ("Bradley") hired W.O. Cantey Services, Inc. ("W.O. Cantey") to stabilize the foundation and first floor system of a property they were renovating located at 718 King Street in Charleston, South Carolina (the "residence"). *Id.* at 3.

15. According to the Complaint, on March 8, 2022, Anna Larkin Bradley ("Larkin Bradley") sold the residence to TU Solutions, LLC ("TU Solutions"), a limited liability company in which she is a member. *Id.* at 1.

16. According to the Complaint, W.O. Cantey hired Trash Gurl, LLC ("Trash Gurl") to provide trash disposal services at the residence, which included delivering and hauling off large trash containers containing construction debris and other waste from the Project. *Id.*

17. According to the Complaint, in late Spring or early Summer of 2022, W.O. Cantey began performing its work on the residence including, but not limited to the installation of helical and CMU piers, replacement of the subfloor, floor joists, and beams. *Id.* at 4.

18. According to the Complaint, at or shortly after W.O. Cantey's work was ongoing, Trash Gurl delivered a large roll of container to the Residence, positioning it in the driveway directly adjacent to the home. *Id.*

19. According to the Complaint, in July of 2022, Trash Gurl picked up a roll off container at the Property and delivered an empty roll off container to the Residence. *Id.*

20. According to the Complaint, when Trash Gurl was placing the empty roll off container at the Residence, it struck portion of the floor beam and/or pier supporting the subfloor and remainder of the Residence. *Id.*

21. According to the Complaint, the Bradley's were then notified by a neighbor that the brick veneer skirt on the side of the home was falling off and the home appeared to be leaning towards their property and looked like it may collapse. *Id.*

22. According to the Complaint, the Bradley's notified the City of Charleston's Building department about the state of the residence and the potential for the residence to collapse. *Id.*

23. According to the Complaint, the Bradley's hired a structural engineer to perform an inspection of the Residence. He concluded the compromise of the structural integrity of the Residence necessitated completely demolishing and removing the home. *Id.* at 5.

24. On July 27, 2022, W.O. Cantey hired a private engineer to inspect the residence. He concluded that W.O. Cantey's work to date was relatively stable, but that some additional shoring was necessary. *See* Report, attached hereto as Exhibit B.

25. The Bradley's terminated W.O. Cantey from the Project while its work was ongoing and refused to allow it to return to the Project to complete its scope of work.

26. According to the Complaint, on or about August 12, 2022, the City of Charleston issued a "Notice of Violation Summary Abatement" that condemned the Residence and directed the Bradley's to have it demolished. *Id.*

27. According to the Complaint, Bradley's had the entire structure demolished and all of the building materials and debris removed from the property. *Id.*

28. In the Complaint, the Bradley's brought claims of Negligence/Gross Negligence, Breach of Warranty, Breach of Contract, Negligent Misrepresentation, and Unfair Trade Practices against, among others, W.O. Cantey. *See generally*, Exhibit A.

29. With regard to the Negligence/Gross Negligence claim, the Bradley's allege W.O. Cantey was negligent, careless, reckless, grossly negligent in one or more of the following particulars: (a) in failing to properly inspect the site and/or geological conditions; (b) in failing to determine the proper work that needed to be done to stabilize the residence and install an adequate floor system; (c) in failing to obtain permits for the project; (d) in failing to properly supervise the work on the residence; (e) in failing to properly supervise the work on the home; (f) in failing to property coordinate with the subcontractors; (g) in failing to properly install the foundation support system and subfloor system and joists; (h) in failing to install the foundation support system and/or flooring system in accordance with the manufacturer's instructions and requirements; (i) in failing to construct and install an adequate subfloor and flooring system; (j) in failing to make arrangements for the proper storage of a roll off container on the property; (k) in failing to keep a proper lookout while loading and unloading roll off containers on the property; (l) in failing to hire subcontractors qualified to perform their work on the residence; (m) in covering up their own defective work and the defective work of others; (n) in failing to make proper repairs once their defective work should have become apparent to them; (o) in failing to complete their work in a prompt and timely manner; (p) in failing to inform Plaintiffs of the latent deficiencies in the construction of the residence; (q) in failing to inform Plaintiffs that a roll off container had struck the foundation system of the residence during the project; (r) in failing to act as a reasonable person would in the circumstances then and there prevailing; and (s) in such other failures to be proven at trial. *Id.* at 8-9.

30. In the Complaint, the Bradley's seek to recover actual damages and consequential damages, special damages, statutory or punitive damages, reasonable attorneys' fees, costs of suit, prejudgment interest, and treble damages. *Id.* at 13-14.

31. On May 1, 2024, W.O. Cantey filed an Answer to the Complaint. A true and accurate copy of W.O. Cantey's Answer to attached hereto as <u>Exhibit C</u>.

## POLICY

32. Builders issued the following package policy to W.O. Cantey: PKG 0214853-06, with effective dates of April 29, 2022 to April 29, 2023. The Policy has $1,000,000 per occurrence limits with a $2,000,000 general aggregate limit. A true and accurate copy of the Policy is attached hereto as <u>Exhibit D</u>.

33. Builders is currently defending W.O. Cantey under a complete reservation of rights. *See* ROR Letters, attached hereto as <u>Exhibit E</u>.

## FOR A FIRST CAUSE OF ACTION
### Declaratory Judgment
### (Ongoing Operations)

34. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

35. According to the Complaint, the Bradley's became concerned with W.O. Cantey's work and the state of the Project while the work was ongoing.

36. According to the Complaint, Trash Gurl struck a portion of the floor beam and/or pier supporting the subfloor and remainder of the Residence while the work was ongoing.

37. Prior to completing the Project, the Bradley's terminated W.O. Cantey from the Project and refused to allow it to complete its scope of work.

38. According to the Complaint, the Bradley's proceeded with demolishing the Residence prior to the completion of W.O. Cantey's work.

39. In the event there is any qualifying "property damage", Builders will show that any such "property damage" is barred by Exclusion j(5) in the Policy because there is no coverage for

that particular part of real property on which W.O. Cantey and/or its subcontractors are performing operations, if the "property damage" arises out of those operations.

40. Likewise, in the event there is any qualifying "property damage," any such "property damage" is barred by Exclusion j(6) in the Policy because there is no coverage for any property damage that must be restored, repaired, or replaced because "your work" was incorrectly performed.

41. As such, Builders seeks a binding declaration from the Court that Exclusions j(5) and j(6) in the Policy bar coverage in the Underlying Action, and therefore, Builders has no duty to defend or indemnify W.O. Cantey in the Underlying Action.

## FOR A SECOND CAUSE OF ACTION
### Declaratory Judgment
### (Professional Services Exclusions)

42. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

43. According to the Complaint, W.O. Cantey failed to complete the project in accordance with the applicable building code, state law, good design and in conformance with the manufacturer's instructions and industry standards.

44. The Policy does not provide coverage for any qualifying "property damage" arising out of the rendering of or the failure to render any professional services as a result of W.O. Cantey providing engineering, architectural, or surveying services in W.O. Cantey's capacity as an engineer, architect, or surveyor or by providing such services through hiring independent professionals to provide engineering, architectural, or surveying services in connection with W.O. Cantey's work.

45. Likewise, the Policy does not provide coverage for any qualifying "property damage" arising from professional services including, but not limited to, approving or failing to approve drawing and specifications, as well as any inspection or quality control activities done by, or for, W.O. Cantey, on a project.

46. Builders would show that any qualifying "property damage" found against W.O. Cantey that relates to any professional services by W.O. Cantey is excluded under the Designated Professional Services Exclusion (Form CG 21 16 04 13), Engineers, Architects or Surveyors Professional Liability Exclusion (Form CG 22 43 04 13), Contractors Professional Liability Exclusion (Form CG 22 79 04 13), and the Construction Management Errors and omissions Exclusion (Form 22 34 04 13).

47. As such, Builders seeks a binding declaration from the Court that Designated Professional Services Exclusion (Form CG 21 16 04 13), Engineers, Architects or Surveyors Professional Liability Exclusion (Form CG 22 43 04 13), Contractors Professional Liability Exclusion (Form CG 22 79 04 13), and Construction Management Errors and omissions Exclusion (Form 22 34 04 13) in the Policy bars coverage in the Underlying Action, and therefore, Builders has no duty to defend and indemnify W.O. Cantey in the Underlying Action.

**FOR A THIRD CAUSE OF ACTION**

**Declaratory Judgment**
**(Resultant Damage vs. Faulty Work)**

48. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

49. The damages alleged in the underlying lawsuit do not constitute "property damage" caused by an "occurrence" as defined by the Builders' policy.

9

50. Builders seeks a binding declaration from this Court that repair costs associated with a finding of defective or faulty work by W.O. Cantey and/or its subcontractor does not meet the policy's definition of "property damage" caused by an "occurrence" and are excluded under the Resulting Damage Coverage endorsement (Forms GL RFWE 10 13 and GL ESCW 01 07).

51. Builders seeks a binding declaration from this Court that the loss of use damages associated with a finding of defective or faulty work by W.O. Cantey and/or its subcontractor are excluded under the Resulting Damage Coverage Endorsement (Form GL RFWE). *Id.*

52. Builders seeks a binding declaration from the Court that it does not owe a duty to defend or indemnify because the damages in the underlying lawsuit do not constitute "property damage" caused by an "occurrence" as defined by the Policy and South Carolina law.

53. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a declaration allocating any damages found against W.O. Cantey and/or its subcontractors relating to its scope of work at the project be allocated into categories of (1) improper work, and (2) resulting damages.

54. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a declaration of the dollar amount of damages that meet the definition of "property damage" caused by an "occurrence."

55. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a binding declaration from this Court that any damages meeting the definition of "property damage" and not otherwise excluded and/or limited by any applicable policy exclusions or limiting endorsements under the Builders' policy must be applied to a time-on-risk analysis to determine which of those damages fall within the policy period.

## FOR A FOURTH CAUSE OF ACTION
### Declaratory Judgment
### (Additional Exclusions)

56. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

57. Builders would show any such property damage is excluded by the Expected or Intended Exclusion to the extent that it was expected or intended from the standpoint of the insured.

58. Builders would show that any qualifying "property damage" is excluded by the Contractual Liability Exclusion to the extent that W.O. Cantey is obligated to pay such damages by reason of the assumption of liability in a contract or agreement.

59. Builders would show that any qualifying "property damage" is excluded by Exclusions K – N because there is no coverage to repair W.O. Cantey and/or its subcontractor's work or product or for damage to materials, parts or equipment furnished in connection with products handled or sold by W.O. Cantey and/or its subcontractor.

60. Builders would show that the Policy provides only limited fungi/mold coverage, with a $2,500 limit and a $2,000 deductible, for any property damage found against W.O. Cantey and/or its subcontractors that would not have occurred, but for the threatened existence of fungi.

61. Builders would show that any other damages and costs claimed in the Underlying Action including, but not limited to, punitive damages and attorneys' fees, that do not meet the definition of "property damage" and are not caused by an "occurrence," are not covered under the Policy.

62. Builders would show that the Policy excludes payment of attorneys' fees and expenses taxed against W.O. Cantey under the Supplementary Payments section of the Policy.

11

63. Builders seeks a binding declaration from this Court that any damages meeting the definition of "property damage" and not otherwise excluded and/or limited by any applicable policy exclusions or limiting endorsements under the Builders' policy must be applied to a time-on-risk analysis to determine which of those damages fall within the policy period.

64. Builders would show that any property damage found against W.O. Cantey that is found to fall under any applicable policy exclusion(s) or limiting endorsement(s) in the Policy are excluded and/or limited. Builders reserves its right to identify additional exclusion(s) and endorsement(s) not explicitly mentioned herein that may exclude or limit coverage.

65. Builders, therefore, seeks a declaration from the Court that the Policy does not require Builders to defend and indemnify W.O. Cantey with respect to the claims against it in the Underlying Action.

WHEREFORE, having fully set forth its claims, Builders prays for relief as follows:

1. For a declaration of the rights and obligations of the parties herein;

2. For a declaration that Builders does not owe a duty to defend and indemnify W.O. Cantey in the Underlying Lawsuit;

3. In the alternative, for a declaration that determines which damages, if any, trigger the duty of indemnity under the Builders' policy;

4. For the court to determine the dollar amount of damages, if any, due under the relevant Builders' policy after conducting an analysis of the damages to determine which damages, if any, from the underlying lawsuit meet the requirements of the insuring agreement, are not excluded or limited by exclusions or endorsements, and that are property damage caused by an occurrence during the policy subject to a time-on-risk analysis; and

5. For any and all other relief this Court deems just and proper.

                ETHRIDGE LAW GROUP, LLC


                By: *s/ Mary S. Willis*
                   MARY S. WILLIS
                   Federal Bar No.: 12388
                   R. MICHAEL ETHRIDGE
                   Federal Bar No.: 7497
                   1100 Queensborough Blvd., Suite 200
                   Mount Pleasant, SC 29464
                   843-614-0007
                   mwillis@ethridgelawgroup.com
                   methridge@ethridgelawgroup.com

                *Attorneys for Plaintiff*